UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BORGWARNER, INC.,

        Plaintiff(s),

v.

DORMAN PRODUCTS, INC.,

        Defendant(s).
                                                /

Case No. 09-11602

Honorable John Corbett O'Meara

**OPINION AND ORDER GRANTING
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Before the court is Plaintiff's motion for preliminary injunction, filed May 27, 2009. After several adjournments while the parties attempted to resolve this matter, the court heard oral argument on November 5, 2009, and took the matter under advisement. For the reasons stated in this opinion and order, the court grants Plaintiff's motion.

**BACKGROUND FACTS**

Plaintiff BorgWarner, Inc., is suing Dorman Products, Inc., for patent infringement. In the 1990s, BorgWarner developed a new regenerative air pump to be used as part of an emission control system in automobiles. Regenerative air pumps supply the necessary oxygen to the catalytic converters on vehicles in order to convert the hydrocarbons in the engine exhaust to water and other gases. BorgWarner obtained U.S. Patent Nos. 5,527,149 and 6,422,808 on the regenerative air pump.

BorgWarner contends that it expended significant time and expense in developing the new regenerative air pump. According to BorgWarner, its invention filled an unmet need in the

automobile industry and overcame problems with prior emission control systems. BorgWarner states that its patented systems were an "instant hit" and are standard components in millions of new vehicles. BorgWarner reports that it has sold $150 million in original equipment air pumps and $5 million in aftermarket air pumps.

BorgWarner claims that Dorman is selling exact duplicates of a component of its U.S.-made air pumps that are manufactured in China. According to BorgWarner, Dorman sent a BorgWarner air pump to China to be duplicated. The part sold by Dorman is designed to be "mated" with a BorgWarner cover to comprise the air pump. See Pl's Br. at 4 (photographs).

BorgWarner contends that Dorman's air pumps, sold in the aftermarket, are of inferior quality and undercut BorgWarner's price. According to BorgWarner, Dorman's air pumps do not meet EPA emission control standards.

Dorman does not dispute that its product is a copy of BorgWarner's component. It does argue, however, that because its product does not include the air pump cover, the product does not infringe on all of BorgWarner's patent claims. Dorman further asserts that its product is a permissible repair part. In addition, Dorman claims that BorgWarner's patents are invalid for anticipation and obviousness. Dorman has filed a request for reexamination of the patents with the U.S. Patent Office.

## **LAW AND ANALYSIS**

Courts have the power to issue injunctions to protect patent rights. See 35 U.S.C. § 283. In considering whether to grant a preliminary injunction, a court must consider whether the patent owner has shown: (1) a reasonable likelihood of success on the merits; (2) the prospect of irreparable harm to the patent owner in the absence of the injunction; (3) that this harm would exceed harm to

the alleged infringer when subject to the injunction; and (4) that granting the injunction is in the public interest. Pfizer, Inc. v. Teva Pharmaceuticals USA, Inc., 429 F.3d 1364, 1372 (Fed. Cir. 2005). To succeed on the merits, BorgWarner must show that Dorman infringed a valid and enforceable patent. Id. A patent is infringed if any one of its claims is infringed. Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1220 (Fed. Cir. 1995). A patent is presumed valid. See 35 U.S.C. § 282; Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc., 134 F.3d 1085, 1088 (Fed. Cir. 1998).

### A. Likelihood of Success on the Merits

There are three types of infringement: direct infringement (35 U.S.C. § 271(a)), inducement infringement (§ 271(b)), and contributory infringement (§ 271(c)).

#### 1. Infringement

With respect to direct patent infringement, the court conducts a two-step inquiry: (1) determining the meaning and scope of the asserted patent claims (claim construction); and (2) comparing the properly construed claims to the device accused of infringement. Techsearch, LLC v. Intel Corp., 286 F.3d 1360, 1371 (Fed. Cir. 2002). Claim construction is a question of law for the court. Id. at 1369. In comparing the claims to the accused device, the court must determine whether every claim limitation or its equivalent is found in the accused device. See Jansen v. Rexall Sundown, Inc., 342 F.3d 1329, 1332 (Fed. Cir. 2002).

A person *induces* infringement under § 271(b) by actively and knowingly aiding and abetting another's direct infringement. C.R. Bard Inc. v. Advanced Cardiovascular Sys. Inc., 911 F.2d 670, 674-75 (Fed. Cir. 1990). With respect to *contributory* infringement, the statute provides as follows:

> Whoever sells a component of a patented ... combination ... constituting a material part of the invention, knowing the same to be especially made or

> especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

35 U.S.C. § 271(c). Under this provision, "one must show that an alleged contributory infringer knew that the combination for which his components were especially made was both patented and infringing." Preemption Devices, Inc. v. Minnesota Mining & Mfg. Co., 803 F.2d 1170, 1174 (Fed. Cir. 1986) (citing Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 488-91 (1964)). The plaintiff must also show that "a component especially made or adapted for use in the patented combination is not a staple article suitable for substantial noninfringing use." Id.

Because Dorman is selling a substantial piece of the air pump (minus the cover), rather than the whole part, BorgWarner is alleging inducement and contributory infringement, rather than direct infringement. (The direct infringement occurs when the Dorman part is mated with the BorgWarner cover in the vehicle.)

In general, BorgWarner's patents are for a "regenerative pump for adding energy to a fluid" comprising (a) an impeller housing; (b) an impeller; (c) a flow chamber; and (d) a casing enclosing the impeller. See Pl.'s Br. at 15-16 (claim charts), Pl.'s Ex. B at ¶¶ 14-23 (Declaration of Robert S. Czarnowski). BorgWarner contends that, when the Dorman air pump (consisting of an impeller housing, impeller, flow chamber, and electric motor) is combined with the BorgWarner cover (casing), the product meets every feature and structural limitation set forth in claim 1 of the '149 patent and claim 1 of the '808 patent. See Pl.'s Br. at 14-17 (claim charts). Indeed, the Dorman air pump appears to be an identical copy of the BorgWarner air pump. There is no noninfringing use for the Dorman air pump on its own; rather it is designed to be used in combination with the BorgWarner cover. When the Dorman air pump is mated with the BorgWarner cover, it is

undisputed that every feature and limitation of '149 patent and '808 patent is met.[1] Therefore, BorgWarner argues, it is likely to succeed on the merits of its inducement and contributory infringement claims.

### 2. **Permissible Repair or Infringing Reconstruction**

Dorman contends, however, that its air pump constitutes a "permissible repair" of the BorgWarner pump and does not infringe. See Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 345-46 (1961) (Aro I) (discussing permissible repair versus infringing reconstruction). The affirmative defense of permissible repair derives from a customer's implied license to use a patented item. When a patented item is sold, the customer is granted an implied license to use the device for its useful life. See Kendall Co. v. Progressive Medical Tech., 85 F.3d 1570, 1573-74 (Fed. Cir. 1996). "That implied license to use included the right to repair the patented article and necessarily to purchase repair parts from others." Id.

Courts have struggled to distinguish between permissible repair and impermissible reconstruction of a patented device. See Husky Injection Molding Sys. Ltd. v. R & D Tool & Engin. Co., 291 F.3d 780, 784-85 (Fed. Cir. 2002). In Aro I, the Supreme Court held that the replacement of one unpatented element of a patented combination does not constitute reconstruction "however

---

[1] Dorman argues that BorgWarner has not engaged in proper claim construction in support of its claim. With respect to infringement, however, Dorman has not disputed the meaning of any claim or claim limitation. Claim construction is not necessary for claim language that is not in dispute. See O2 Micro Int'l Ltd. v. Beyond Innovation Technology Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008) (claim construction is a question of law for the court "when the parties raise an actual dispute regarding the proper scope of these claims"); Vivid Tech. Inc. v. American Science & Engin., Inc., 200 F.3d 795, 803 (Fed. Cir. 1999) (noting that, with respect to claim construction, "only those terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy").

essential it may be to the patented combination and no matter how costly or difficult replacement may be." Aro I, 365 U.S. at 345. The Court further explained that "reconstruction of a patented entity, comprised of unpatented elements, is limited to such a true reconstruction of the entity as to 'in fact make a new article'" or a "second creation of the patented entity." Id. at 346. In Aro I, the Court held that the replacement of the fabric in a patented convertible top to be a permissible repair. See also Husky, 291 F.3d at 787 ("At a minimum, repair exists if the part being repaired is a readily replaceable part.").

In Sandvik Aktiebolag v. E. J. Co., 121 F.3d 669 (Fed. Cir. 1997), the Federal Circuit outlined factors for courts to consider in determining whether a defendant has reconstructed the patented item: "the nature of the actions by the defendant, the nature of the device and how it is designed (namely, whether one of the components of the patented combination has a shorter useful life than the whole), whether a market has developed to manufacture or service the part at issue and objective evidence of the intent of the patentee." Id. at 673. Whether a defendant's actions constitute permissible repair or an infringing reconstruction is a question of law. Id. at 672.

In Sandvik, the patent at issue was for a commercial drill, which could be re-sharpened several times before it was spent. The patent owner sued the defendant for re-tipping the drills. Although the defendant claimed that this was a permissible repair, the Federal Circuit disagreed. The court found that the drill tip was "not manufactured to be a replaceable part"; the defendant "does not just attach a new part for a worn part, but rather must go through several steps to replace, configure and integrate the tip onto the shank. . . . These actions are effectively a re-creation of the patented invention after it is spent." Id. at 673-74.

6

BorgWarner contends that the only part that can fail and need replacement in its patented combination is the motor. Reply, Ex. D at ¶ 6 (Supplemental Declaration of Robert S. Czarnowski). According to the co-inventor, Robert S. Czarnowski, the motor can be replaced in the patented air pump by removal of the impeller and four screws. Id. Dorman has not presented evidence to rebut this contention.

Viewing the totality of the circumstances, the court concludes that Dorman is not repairing the pump by replacing a "readily replaceable" part (such as the motor), but re-creating a substantial part of the patented combination. Dorman is unlikely to succeed on its permissible repair defense.

### 3. Invalidity

To succeed on the merits, however, BorgWarner must also show that it is likely to withstand Dorman's challenges to the validity of the '149 and '808 patents. See Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001). At the preliminary injunction stage, a validity challenge may be successful by raising "substantial questions of invalidity, on evidence that would not suffice to support a judgment of invalidity at trial." Id. at 1358. "The test for invalidity at trial is by evidence that is clear and convincing. . . . In resisting a preliminary injunction, however, one need not make out a case of actual invalidity. Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." Id. at 1358-59.

In order to prevail on its invalidity defense at this stage, Dorman must demonstrate that each and every claim of both the '149 and '808 patent is vulnerable. See 35 U.S.C. § 282 ("Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; dependent or multiple dependent claims shall be

presumed valid even though dependent upon an invalid claim."). Dorman has not provided the court with information sufficient to undertake such an analysis.

A "validity analysis must be performed on a claim-by-claim basis." Amazon.com, 239 F.3d at 1351. The first step in such an analysis is claim construction. Id. ("A claim must be construed before determining its validity just as it is first construed before deciding infringement."). "Only when a claim is properly understood can a determination be made whether the claim 'reads on' an accused device or method, or whether the prior art anticipates and/or renders obvious the claimed invention." Id. Although Dorman argues in a conclusory fashion that each of the claims of both the '149 and '808 patents are anticipated or obvious, it does not provide its interpretation of each claim limitation so that the court can determine whether, and in what way, the parties dispute the meaning of each claim limitation. See Dana Corp. v. American Axle & Manuf., Inc., 279 F.3d 1372, 1376 (Fed. Cir. 2002) ("[A] court may not invalidate the claims of a patent without construing the disputed limitations of the claims and applying them to the allegedly invalidating acts.").

Nor can the court determine whether each claim limitation is anticipated or obvious on this record. See generally KSR Int'l Co. v. Teleflex Inc., 550 U.S. 398, 406 (2007) (obviousness analysis); Atlas Powder Co. v. Ireco, Inc., 190 F.3d 1342, 1346 (Fed. Cir. 1999) (anticipation). With respect to obviousness,

> the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.

KSR, 550 U.S. at 406. With respect to anticipation, "a prior art reference must disclose every limitation of the claimed invention, either explicitly or inherently." Atlas, 190 F.3d at 1346. Without a more thorough analysis, Dorman cannot cast enough doubt on the validity of the patents to avoid a preliminary injunction. On this record, BorgWarner has demonstrated a likelihood of success on the merits.

### B. Irreparable Harm

In patent cases where the plaintiff has shown a likelihood of success on the merits, irreparable harm is presumed. Smith Int'l, Inc. v. Hughs Tool Co., 718 F.2d 1573, 1581 (Fed. Cir. 1983). 35 U.S.C. § 283 provides for injunctive relief to "preserve the legal interests of parties against further infringement which may have market effects never fully compensable in money." Atlas Powder Co. v. Ireco Chems., 773 F.2d 1230, 1233 (Fed. Cir. 1985). Absent preliminary injunctive relief, infringers would be "compulsory licensees for as long as the litigation lasts." Id.

In addition to presumed harm, BorgWarner contends that it will suffer actual irreparable harm if an injunction is not entered. BorgWarner asserts that Dorman is threatening its market share by undercutting its prices and using its technology. Plaintiff also contends that Dorman is harming its goodwill and reputation by selling an inferior copy of its product.

Dorman asserts that BorgWarner has only submitted conclusory allegations, rather than evidence of actual harm. Even so, Dorman has not rebutted the presumption of irreparable harm that has arisen, given BorgWarner's likelihood of success on the merits.

> Absent a finding clearly negating irreparable harm, such as that future
> infringement was no longer likely, that the patentee was willing to forgo its right
> to exclude by licensing the patent, or that the patentee had delayed in bringing
> suit, there was no basis for finding that the presumption of irreparable harm was

>overcome. Because of the very nature of a patent, which provides the right to exclude, infringement of a valid patent inherently causes irreparable harm in the absence of the above or similar exceptions.

Polymer Techs. Inc. v. Bridwell, H.A., 103 F.3d 970, 975 (Fed. Cir. 1996). Accordingly, the irreparable harm factor weighs in favor of BorgWarner.

### C. Balance of Hardships and Public Interest

The balance of hardships also likely favors BorgWarner here. BorgWarner contends that it faces a threat to its market share, goodwill, and reputation if an injunction is not issued. BorgWarner asserts that an injunction is also necessary to deter other potential infringers. If an injunction is issued, Dorman will have to stop selling the infringing air pumps. This hardship is the result of Dorman's own actions in duplicating BorgWarner's pump.

The public interest also favors BorgWarner, given the strong public policy favoring the enforcement of patent rights. See PPG Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1567 (Fed. Cir. 1996).

### D. Conclusion

For all the foregoing reasons, the court will grant BorgWarner's motion for preliminary injunction.

### E. Dorman's Motions

The court has also thoroughly reviewed Dorman's pending motions: (1) Emergency motion for expedited discovery and evidentiary hearing, filed June 12, 2009; (2) Motion to file sur-reply and renewed emergency motion for expedited discovery, enlargement of time, and evidentiary hearing, filed October 15, 2009; (3) Motion to stay proceedings pending reexamination of the patents-in-suit, filed October 28, 2009; and (4) Emergency motion to

adjourn the hearing on Plaintiff's motion for preliminary injunction, filed October 28, 2009. The court will deny these motions. The discovery requested by Dorman includes BorgWarner's (1) research and development efforts; (2) sales and revenues; (3) testing and analysis of Dorman's products; (4) employee-inventor's infringement analysis; (5) employee-inventor's conclusions regarding the legal doctrine of permissible repair; (6) employee-inventor's conclusions regarding obviousness; and (7) employee-inventor's conclusions regarding the prior art. The court concludes that discovery is not necessary on these issues prior to the issuance of a preliminary injunction because they reflect facts that are not relevant or relied upon by the court in its analysis. Nor has Dorman identified true factual disputes that require an evidentiary hearing.

The motion to stay pending re-examination is premature; as far as the court is aware, the Patent Office has not accepted Dorman's request for re-examination proceedings. Further, the court is concerned with the length of time that re-examination would take and the potential prejudice to BorgWarner if Dorman is not enjoined from selling its infringing product during that time. In addition, it appears unlikely that the Patent Office will invalidate <u>all</u> 19 claims of the '808 patent and 36 claims of the '149 patent, which is what would be necessary for Dorman to prevail on its invalidity defense here.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that BorgWarner's motion for preliminary injunction is GRANTED.

IT IS FURTHER ORDERED that Dorman's motions are DENIED.

s/John Corbett O'Meara<br>
United States District Judge

Date: December 11, 2009

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, December 11, 2009, using the ECF system and/or ordinary mail.

s/William Barkholz<br>
Case Manager